UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF TENNESSEE
EASTERN DIVISION

| | |
|---|---|
| **ANTHONY DAY,** for himself and all others similarly situated,<br><br>Plaintiffs,<br>v.<br><br>**RAZBAN ENTERPRISES, INC., A TENNESSEE CORPORATION,**<br><br>Defendant. | CASE NO. 1:19-cv-1170-STA<br><br>**COLLECTIVE ACTION COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

**JOINT MOTION FOR APPROVAL OF SETTLEMENT AGREEMENT
AND CONDITIONAL CERTIFICATION OF AN FLSA COLLECTIVE ACTION FOR
SETTLEMENT PURPOSES, AND PLAINTIFFS' REQUEST FOR ATTORNEY'S FEES**

Plaintiff, Anthony Day ("Plaintiff"), on his own behalf and on behalf of all individuals similarly situated, and Defendant, Razban Enterprises, Inc. ("Defendant") (collectively, "Parties") jointly move for approval of the Parties' Settlement and Release Agreement ("Settlement Agreement")[1] and for conditional certification of an FLSA collective action for settlement purposes only. Plaintiff also moves for an award of attorney's fees.[2] In support of this Joint Motion for Approval, the Parties file the following memorandum of law.

I.

Introduction

Plaintiff alleges that Defendant violated the Fair Labor Standards Act, 29 U.S.C.§§201, *et seq.* ("FLSA") by failing to pay him and other delivery drivers sufficient expense reimbursements for the use of their vehicles in delivering pizzas and other items on Defendant's behalf. Plaintiff claims that

---

[1] Defendant is contemporaneously filing a motion to file the settlement agreement under seal or for *in camera* review.

he and all delivery drivers who worked for Defendant during the Release Period ("Settlement Collective Members"), were thus not paid all appropriate minimum wages as a result of the alleged under reimbursement, which Plaintiff alleges cut into the minimum wages paid to the Settlement Collective Members.  Defendant, in turn, maintains that it properly paid all its delivery drivers, including Plaintiff, sufficient expense reimbursement such that the alleged minimum wage violations did not occur.  As a result, Defendant maintains that it has not violated the FLSA and is not liable in any manner to Plaintiff or to members of the putative collective action.

The Parties engaged in months of discussions, including exchanging detailed information concerning the Settlement Collective Members' deliveries, miles driven, and reimbursement paid, legal research and other requested information.  The Parties then engaged in mediation before an experienced mediator, Kay Wolf, Esq., who has served as mediator in numerous other similar delivery driver class and collective actions.  As a result of this mediation, the Parties arrived at a final settlement.  All of the Parties and their counsel believe that the terms of the proposed settlement, which are summarized below, are fair and should be approved.  The settlement grants relief for the Plaintiff and Settlement Collective Members, provides an appropriately limited release in favor of the Defendant, and the total settlement amount is properly discounted to account for the Plaintiff's probability of success and Defendant's alleged defenses.

In this memorandum, the Parties summarize the significant terms of their agreement; describe the procedure for approval of a collective action settlement and the legal principles governing the approval of a settlement in a collective action; and apply these principles to show why this proposed settlement is fair and reasonable, and should be approved.

---

[2] Defendant does not oppose Plaintiffs' request for attorney's fees as set forth in this Motion, but it does not join in the request.

2

II.

Summary of the Settlement Agreement

Under the Settlement Agreement, the Parties seek to certify a collective action for settlement purposes under the FLSA and send notice to all persons who worked as a delivery driver for Defendant during a defined period; pay settlement awards to all members of the Settlement Collective who opt to join this lawsuit; provide limited wage and hour releases in favor of Defendant as described in the Settlement Agreement; allow Plaintiff's counsel to seek approval of attorneys' fees and costs up to an agreed limit; and allow Plaintiff who aided Plaintiff's counsel in the investigation and prosecution of the claims raised in the Lawsuit to seek a limited service award.

Conditional certification for settlement purposes

The Parties ask the Court to conditionally certify for settlement purposes a collective action pursuant to Section 216(b) of the FLSA.  The group who would be provided notice and an opportunity to join this lawsuit, defined in the Settlement Agreement as the "Settlement Collective Members," is composed of: all individuals who worked as a delivery driver for Defendant for the period dating back to three years prior to the date the Court approves the settlement.

The conditional certification of a collective action under the FLSA for settlement purposes would allow the Parties to send a Court-approved notice to all individuals who fall within the definition of the Settlement Collective Members.  (The Parties are attaching the proposed Notice as Exhibit "B" to this Motion.)  Along with the Court-approved notice, individuals who fall within the definition of the Settlement Collective Members will receive a check for their portion of the settlement.  Each check will reference the release and state on the back that by cashing the check, the individual is agreeing to join the Lawsuit.  Those individuals who endorse and cash the check would join this Lawsuit, and would be part of the settlement as "Opt-In Plaintiffs" pursuant to the Settlement Agreement.  As the Parties explain in more detail below, there are no due process

3

concerns because, under the opt-in FLSA settlement process, only those who affirmatively agree to join the lawsuit would be bound by the settlement. If a Settlement Collective Member chooses not to accept the payment, then that individual loses no rights and is free to pursue his or her individual claim, if desired, as he or she sees fit.

### Amount of the settlement

#### Amount of fund and individual awards

Defendant has agreed to create a fund defined in the Settlement Agreement as the "Maximum Settlement Amount". Out of the Maximum Settlement Amount, Defendant agrees to pay all payments to the Settlement Collective Members (including all payments for any wages, reimbursements, and penalties); a service award to Plaintiff; and attorneys' fees, costs and expenses, including all costs and expenses of administration, as approved by the Court.

To calculate each Settlement Collective Member's share of the settlement, Plaintiff's Counsel will first calculate the "Net Settlement Amount" by subtracting from the Maximum Settlement Amount the following amounts: up to thirty percent (30%) of the Maximum Settlement Amount for attorneys' fees and costs (including the costs of administration), and a service award for Plaintiff, as approved by the Court. Each Settlement Collective Member's "Settlement Payment" is based on a *pro rata* allocation of the Individual Miles driven by each Settlement Collective Member during the Release Period.[3] The Individual Miles will then be compared to the total Individual Miles driven collectively by the Settlement Collective Members and each Settlement Payment will be the *pro rata* share of each Settlement Collective Member's miles as compared to the total. Each Settlement Collective Member will receive a settlement check in the amount of that Settlement Collective Member's Settlement Payment. Any portion of the Settlement Payments that is not cashed in a

timely manner by the Settlement Collective Members will be returned by the Administrator to Defendant.

### Attorneys' fees, costs, and incentive payments

In addition to the money that is allocated to pay the Settlement Collective Members, Defendant does not oppose Plaintiff's request for an award of attorneys' fees and reimbursement of expenses up to a maximum of 30% of the Maximum Settlement Amount. Plaintiff's Counsel will pay the costs of the Administrator for all the services to be rendered by the Administrator from the awarded fees and costs. Defendant will not oppose Plaintiff's Counsel's request for approval of a service award for Plaintiff. This service award is in recognition of the time and effort spent aiding in the investigation and development of the claims asserted by Plaintiff. If approved, the service awards will be paid from the Maximum Settlement Amount, and will be in addition to Plaintiff's individual settlement share.

### Releases

If the Settlement Agreement is approved, all Settlement Collective Members (that is, all individuals who voluntarily choose to accept this settlement) will release all claims that relate to the alleged under-reimbursement of expenses, including claims for failure to pay minimum wages under the FLSA and under applicable state wage and hour laws.[4] Because this is a settlement agreement under the FLSA, and the Parties are not asking for a settlement under Federal Rule of Civil Procedure 23, there are no absent class members. Consequently, only those individuals who actually consent to join the lawsuit by endorsing and cashing or otherwise negotiating their checks will release any claims.

---

[3] As described in the Settlement Agreement, miles recorded for each Settlement Collective Member for the third year of damages will be reduced by 50% to account for risk involving proving a willful violation under the Fair Labor Standards Act.

III.

Procedure and Governing Law for Approval of Settlement Agreement

A. Procedural considerations

"As a general rule, employees' claims under the FLSA are non-waivable and may not be settled without supervision of either the Secretary of Labor or a district court." *Gentrup v. Renovo Servs., LLC,* 2011 WL 2532922, at *2 (S.D. Ohio June 24, 2011) (citing *Lynn's Food Stores, Inc. v. United States ex rel. U.S. Dep't of Labor,* 679 F.2d 1350, 1352–53 (11th Cir.1982)). Because the settlement of a FLSA claim has no binding effect on absent class members—it only binds the potential class members who affirmatively opt-in—approval of the Settlement Agreement is governed by FLSA procedures, not the procedure prescribed for class actions. *See Calderone v. Scott*, 838 F.3d 1101, 1102 (11th Cir. 2016) ("The FLSA's § 216(b) requires plaintiffs to 'opt in' to be considered class members. In contrast, a Rule 23(b)(3) class action requires plaintiffs to 'opt out' if they do not wish to be bound by the court's judgment.")

B. Considerations for approval

In reviewing a settlement of a private FLSA claim, the court must scrutinize the proposed settlement for fairness and determine whether the settlement is a fair and reasonable resolution of a *bona fide* dispute over FLSA provisions. *See Bartlow* v. *Grand Crowne Resorts of Pigeon Forge,* 2012 WL 6707008, at *1 (E.D. Tenn. Dec. 26, 2012); *Wills v. Cellular Sales of Tenn., LLC,* 2014 WL 8251539, at *1 (E.D. Tenn. Aug. 18, 2014); *Simmons* v. *Mathis Tire & Auto Serv., Inc.,* 2015 WL 5008220, at *1 (W.D. Tenn. Aug. 20, 2015). When it appears that a settlement "reflect[s] a reasonable compromise over issues, such as FLSA coverage or computation of back wages[] that are actually in dispute," the Court should "approve the settlement in order to promote the policy of encouraging settlement of

---

[4] In exchange for Plaintiff's service award, Plaintiff will enter into a broader, general release, which is set forth in the Supplemental Settlement Agreement, attached as an exhibit to the Settlement Agreement.

6

litigation." *Lynn's Food Stores,* 679 F.2d at 1354. Additionally, a court presiding over an FLSA suit "shall, in addition to any judgment awarded to the plaintiff or plaintiffs, allow a reasonable attorney's fee to be paid by the defendant, and costs of the action." 29 U.S.C. § 216(b).

When asked to review and approve the terms of settlement under the FLSA, there is a "strong presumption" in favor of approval. *Hamilton v. Frito-Lay, Inc.*, 2007 WL 328792, at *2 (M.D. Fla. Jan. 8, 2007), report and recommendation adopted, 2007 WL 219981 (M.D. Fla. Jan. 26, 2007). The settlement in this case was finalized after the Parties engaged in the exchange of extensive and complete data, and mediation before an experienced employment law mediator. As the Parties explain in more detail below, this Settlement Agreement is fair and reasonable, and should be approved.

IV.

Agreement Is Fair and Reasonable

The Court should approve the Settlement Agreement because it is fair and reasonable. The settlement was negotiated at arm's-length by experienced counsel; the amount Defendant has agreed to pay the Settlement Collective Members is fair and adequate; there is a risk to the Settlement Collective of an adverse judgment on the merits or whether the case should proceed as a collective action; the Settlement Collective Members will receive adequate notice sufficient for each potential opt-in to assess his or her rights; the Settlement Collective Members are sufficiently similar for *conditional* certification for settlement purposes; and the amount of fees, costs and service award requested are in line with sums previously awarded in similar cases. This settlement is particularly fair and reasonable because, unlike a *class* action settlement, only those individuals who voluntarily choose to become part of the lawsuit, and thus to participate in the settlement, are bound by it. As the Parties explain more fully below, any potential Settlement Collective Member who thinks the settlement is unfair is not obligated to participate in the settlement and is not bound by it.

7

A. <u>Settlement is the product of arm's length negotiations and of a *bona fide* dispute</u>

The settlement in this case was reached after the Parties had engaged in a day-long mediation and after exchanging significant data and discussions. Courts in this circuit and beyond have consistently held that "[t]he participation of an independent mediator in settlement negotiations virtually insures that the negotiations were conducted at arm's length and without collusion between the parties." *Bert v. AK Steel Corp.,* 2008 WL 4693747, at *2 (S.D. Ohio Oct.23, 2008). It is the opinion of counsel for both Parties that the settlement is fair, adequate, and reasonable. As courts have repeatedly held, the Court should defer to the judgment of counsel unless there is evidence of collusion. *See Kritzer v. Safelite Solutions, LLC*, 2:10-CV-0729, 2012 WL 1945144, at *7 (S.D. Ohio 2012) ("The Court gives weight to the belief of experienced counsel that a settlement is in the best interests of the class.")

Here, the *bona fide* disputes in this matter include the following:

- whether Defendant paid an appropriate reimbursement rate for the deliveries made by Settlement Collective Members;
- if Plaintiff proves the reimbursement was insufficient, what is the appropriate reimbursement rate that should have been paid;
- whether certification was appropriate or warranted if contested in an adversarial setting;
- whether a third year of damages was available under the FLSA for a "willful" violation;[5] and
- whether liquidated damages are appropriate under the FLSA.

B.      Amount to the Settlement Collective Members is fair

Not only is the settlement the product of an adversarial, non-collusive process, but the amount to be paid to the Settlement Collective Members is fair and reasonable. The settlement here will pay Settlement Collective Members substantially more than what they already received as a reimbursement. This is significant relief which provides additional reimbursement money to each Settlement Collective Member who chooses to join this settlement.

As explained in the Settlement Agreement, the amount allocated to each Settlement Collective Member was determined by Plaintiff's counsel applying a formula that took into consideration the number of miles driven by each Settlement Collective Member and the amount of reimbursement already received during the Release Period. A delivery driver who drove more miles for Defendant during this period will be allocated a proportionally higher share of the settlement than one who drove fewer miles during the period.

These distribution methods are described in the Settlement Agreement and in the Notice that would be sent to each Settlement Collective Member. Only those who voluntarily agree to join the settlement would be bound by it. As stated in the Notice, any Settlement Collective Member who has questions about the settlement may contact Plaintiff's counsel. More importantly, any Settlement Collective Member who disagrees with the allocation does not have to join the settlement, in which case he or she would not give up any rights, including not releasing any claims.

C.      Probability of success and of decertification

In considering settlements, courts should weigh the probability of success, the likelihood of delay in obtaining recoveries, and the risk inherent in any litigation. *See*, *e.g.*, *Gevaerts v. TD Bank*,

---

[5] Here, given this issue of willfulness, the Parties agreed to discount the third year of potential damages by 50% to account for this dispute.

9

2015 WL 6751061, at *7 (S.D. Fla. Nov. 5, 2015).  These factors weigh strongly in favor of approval here.

The claim raised by the Plaintiff—that Defendant under-reimbursed its delivery drivers—involves convincing a court and/or jury that Defendant had a legal obligation to reimburse its drivers at the IRS rate, or alternatively, that the reimbursement rate paid to the delivery drivers was not reasonable.  Plaintiff and his Counsel recognize the litigation risk in proving their case.  Even if Plaintiff was to prevail on the merits, there is a possibility that variations among individual delivery drivers would prevent the case from proceeding as a collective action.

Finally, the strong likelihood that any recovery would take years also weighs in favor of approval.  Indeed, public policy favors settlement, especially in complex cases such as this, where substantial resources can be conserved by avoiding time, cost, and protracted litigation.  *See Lynn's Food Stores, Inc.*, 679 F.2d at 1354 ("…we allow the district court to approve the settlement in order to promote the policy of encouraging settlement of litigation").  Plaintiff's and the Settlement Collective Members' claims are not likely to be decided until after extensive discovery and perhaps a trial.  Even if they prevail, there would likely be an appeal.  Absent settlement, the Settlement Collective is not likely to see any recovery for years.  That fact alone weighs strongly in favor of approval.

D.  <u>Due process considerations</u>

Because there are no absent class members in a FLSA collective action, a settlement under the FLSA does not require the exacting due process considerations necessary under a class action settlement.  There is, for example, no need for an objection period or a fairness hearing; instead, approval may be sought on a single motion to enter a stipulated order.  *See id.* at 1353.  As courts have repeatedly observed, the main reason for this is that only individuals who affirmatively opt-in are bound by the settlement.  Unlike class actions, where class members are bound unless they opt-

10

out, potential members of a FLSA collective action can be bound by a settlement (or participate in any judgment) only if they opt-in. *Calderone*, 838 F.3d at 1102.

In this case, members of the Settlement Collective will have to timely endorse and cash or otherwise negotiate a check that will be mailed to their address if they want to participate in this settlement. Along with the check, they will receive a Notice, which is part of the Settlement Agreement, that will notify them of the existence and nature of the case, and will advise them how to obtain and read the actual Settlement Agreement. Only if they then independently decide to opt-in will they be bound by the settlement, including receiving the settlement payment and being bound by the release. Any individual who chooses not to opt-in is not part of the case, and is not bound in any way by the settlement or any release. That significant difference between a class action settlement and an FLSA settlement weighs in favor of approval, since the individual class members will have the opportunity to make an informed decision about whether to join the settlement and will not be bound by it unless they affirmatively choose to do so.

    E.    <u>Conditional certification</u>

The Parties ask the Court to conditionally certify a collective action for settlement purposes, and to send Notice (as attached to the Settlement Agreement) to the Settlement Collective Members. Given the fact that the individuals who would receive notice all worked for the Defendant in the same position, had the same job title, and worked under the same or similar job description, there is sufficient evidence to meet the "lenient" evidentiary showing required to conditionally certify this action for settlement purposes.[6]

---

[6] Defendant maintains that but for the settlement, this case should not ultimately be maintained as a collective action, and thus should ultimately be decertified if it is not settled. The fact that the case may (or should) ultimately be decertified does not affect whether it should be conditionally certified, especially for settlement purposes.

F.   <u>Fees, costs, and incentive payments</u>

Plaintiff requests that the Court award attorneys' fees and litigation costs (including the costs of administration) of 30% of the common fund settlement, and a service award to Plaintiff. Defendant joins Plaintiff's request to approve the service award to Plaintiff, and it does not oppose (but does not join) Plaintiff's counsel's request for fees and litigation costs as set forth in this Section.

Consistent with Sixth Circuit authority, courts within the Sixth Circuit and throughout the country have agreed that it is appropriate for class counsel to receive their attorneys' fees as a percentage of the common fund, when such fund is created due to their efforts. *See Rawlings v. Prudential-Bache Properties, Inc.*, 9 F.3d 513, 516 (6th Cir. 1993) ("The percentage of the fund method has a number of advantages: it is easy to calculate; it establishes reasonable expectations on the part of plaintiffs' attorneys as to their expected recovery; and it encourages early settlement, which avoids protracted litigation.")[7]; *Dillworth v. Case Farms Processing, Inc.,* 2010 WL 776933, at *8 (N.D. Ohio Mar. 8, 2010) ("The amount of the contingency, one-third of the total award, is also reasonable and has been approved in similar FLSA collective actions") (collecting cases);

Moreover, "the attorneys' fees provision[] of the . . . FLSA exist to enable Plaintiffs to employ reasonably competent lawyers without costs to themselves if they prevail and, thereby, to

---

[7] Consistent with this approach, courts throughout the Sixth Circuit have repeatedly held that 1/3 of a common fund is presumptively reasonable when a case is resolved with the creation of a common fund. *See, e.g., In re Skelaxin (Metaxalone) Antitrust Litig.*, 2014 WL 2946459, at *1 (E.D. Tenn. June 30, 2014) ("The Court finds that the requested counsel fee of one third is fair and reasonable and fully justified. The Court finds it is within the range of fees ordinarily awarded."); *Manners v. Am. Gen. Life Ins. Co.*, 1999 WL 33581944, at *29 (M.D. Tenn. Aug. 11, 1999).

Indeed, throughout the Sixth Circuit, attorneys' fees in class/collective actions have ranged from 20%–50%. *See, e.g., In re Cincinnati Microwave Inc. Sec. Litig.*, Consolidated Master File No. C–1–95–905, Order and Final Judgment (W.D. Ohio Mar. 21, 1997) (awarding 30%); *Adams v. Standard Knitting Mills, Inc.*, [1978 Transfer Binder] Fed. Sec. L. Rep. (CCH) ¶ 96,377 (E.D. Tenn. Jan. 6, 1978) (35.8% award).

help ensure enforcement of the substantive provisions of the FLSA." *United Slate, Tile & Composition Roofers, Damp & Waterproof Workers Ass'n, Local 307 v. G & M Roofing & Sheet Metal Co.. Inc.,* 732 F.2d 495, 502 (6th Cir. 1984). "[O]ne purpose of the percentage method is to encourage early settlements by not penalizing efficient counsel, thus ensuring competent counsel continue to be willing to undertake risky, complex, and novel litigation." *Manual for Complex Litigation*, 4th § 14.121.

As the United States Supreme Court has recognized, without the class/collective action mechanisms, individuals with small claims lack the economic resources to vigorously litigate their rights. Without compensation to those attorneys who are willing to undertake the inherent complexities and unknowns of class and collective action litigation, enforcement of the federal and state laws would be jeopardized. *See Eisen* v. *Carlisle and Jacqueline,* 417 U.S. 156, 161 (1974). Thus, attorneys taking on class and collective actions enable litigants to pool their claims, thus providing a valuable service to the judicial process and society as a whole.

Decisions from around the country in similar wage and hour class/collective actions have awarded attorneys' fees up to, and often in excess of, the 30%[8] requested by Collective Counsel here. *See, e.g.*, *Barber, et al v. Premier Delivery Services, Inc. et al.,* Case No. 2:13-cv-00001-ALM-MRA, Dkt. 51 (S.D. Oh. 2014) (finding a fee of approximately 31% of the common fund to be "reasonable and appropriate..." in wage and hour case); *Wolff v. Cash 4 Titles*, 2012 WL 5290155, at *4 (S.D. Fla. 2012) ("One-third of the recovery is considered standard in a contingency fee agreement."); *Seghroughni v. Advantus Rest., Inc.*, 2015 WL 2255278, at *1 (M.D. Fla. May 13, 2015) ("An attorney's fee… which is one-third of the settlement fund, is awarded from the settlement fund to the plaintiff's Lead Counsel. This amount is fair and reasonable in light of… fee awards in comparable cases.); *Vogenberger v. ATC Fitness Cape Coral, LLC,* 2015 WL 1883537, at*3 (M.D. Fla.

---

[8] Here, because Collective Counsel is paying for costs of the claims administration and other costs (filing fee, mediation, etc.), the actual attorney's fees paid, subject to Court approval, will be approximately 27%.

April 24, 2015) (awarding a fee award of 33% of the FLSA common fund); *Graves v. Estes Heating & Air Conditioning, Inc.,* Case No. 3:14-cv-0084-TCB, Dkt. 47 (N.D. Ga. 2015) (awarding fee of 33.33% of the common fund in FLSA case); *Jackson v. Healthport Technologies, LLC,* Case No. 1:11-cv-01687-SCJ, Dkt. 68 (N.D. Ga. 2013) (approving fees and costs to Class Counsel in the amount of 33 1/3% of the common fund in FLSA case); *Morefield v. NoteWorld, LLC*, 2012 WL 1355573 (S.D. Ga. 2012) (class settlement approved with 33 1/3 of the common fund payable as attorneys' fees); and *Stahl v. Mastec, Inc.,* 2008 WL 2267469 at *2 (M.D. Fla. 2008) (approving attorney fees of $3,744,500.00 out of a common fund of $13,137,365.00). As such, this Court should approve the attorneys' fees requested here. Defendant does not oppose Plaintiff's request for an award of 30% of the common fund to their counsel for attorneys' fees and costs incurred in this action, as well as for the costs of administration.

Defendant also agrees to pay a service award to Plaintiff as described in the Settlement Agreement, in addition to his individual settlement share. This payment is compensation for the time spent in aiding in the investigation and development of the claims asserted by Plaintiff on behalf of the Settlement Collective. "Such awards are discretionary and are intended to compensate class representatives for work done on behalf of the class, to make up for financial or reputational risk undertaken in bringing the action, and, sometimes, to recognize their willingness to act as a private attorney general." *In re Se. Milk Antitrust Litig.,* 2013 WL 2155387, at *8 (E.D. Tenn. May 17, 2013) (quoting *Rodriguez v. West Publ'g. Corp.,* 563 F.3d 948, 958–59 (9th Cir. 2009) (citations omitted). Courts have consistently found service awards to be an efficient and productive way to encourage members of a class to become class representatives. *See In re Se. Milk Antitrust Litig., supra* (approving $10,000 incentive awards to each of the class representatives); *Hainey v. Parrott,* 2007 WL 3308027, at *5 (S.D. Ohio Nov.6, 2007) (approving $50,000 incentive awards); *Fresco v. Auto. Directions, Inc.*, 03-CIV-61063-MARTINE, 2009 WL 9054828 at *6 (S.D. Fla. Jan. 20, 2009)

14

(approving enhancement awards of $15,000); *Garcia v. Gordon Trucking, Inc.*, 1:10-CV-0324 AWI SKO, 2012 WL 5364575 at *11 (E.D. Cal. Oct. 31, 2012) (same); *Perkins v. Am. Nat. Ins. Co.*, 3:05-CV-100CDL, 2009 WL 111631 at *2 (M.D. Ga. Jan. 14, 2009) (same). Here, the Parties respectfully request this Court approve the requested service award described above.

V.

Conclusion

In sum, the Parties, through their counsel, submit the Settlement Agreement as a fair and reasonable resolution of the disputed issues, and believe strongly that its entry will ensure to "secure the just, speedy, and inexpensive determination" of this action. Fed. R. Civ. P. 1. Accordingly, the Parties urge this Court to: (i) conditionally certify this case for settlement purposes as a collective action under Section 216(b) of the FLSA; (ii) approve the Settlement Agreement and its terms; and (iii) approve the issuance of Notice and checks to the Settlement Collective Members.

Dated this 10th day of September, 2019.

**MORGAN & MORGAN, P.A.**

**/s/ C. Ryan Morgan**
C. Ryan Morgan, Esq.
Florida Bar. No. 711884
Morgan & Morgan, P.A.
20 N. Orange Ave., 14th Floor
P.O. Box 4979
Orlando, FL 32802-4979
Telephone:    (407) 420-1414
Facsimile:    (407) 245-3401
Email:  RMorgan@forthepeople.com
   ***Attorneys for Plaintiff***

*/s/ Brian C. Winfrey*
**Brian C. Winfrey, Esq.**
TBN 025766
810 Broadway, Suite 105
Nashville, TN 37203
Telephone: (615) 928-9890

15

Facsimile: (615) 928-9917
Email:bwinfrey@forthepeople.com


**/s/ Courtney L. Leyes**
Courtney L. Leyes, Esq.
TBN 34012
Fisher & Phillips, LLP
1715 Aaron Brenner Drive, Suite 312
Memphis, TN 38120
Telephone: (901) 526-0431
Fascimile: (901) 526-8183
Email: cleyes@fisherphillips.com

UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF TENNESSEE
EASTERN DIVISION

| | |
|---|---|
| **ANTHONY DAY,** for himself and all others similarly situated,<br><br>        Plaintiffs,<br><br>  v.<br><br>**RAZBAN ENTERPRISES, INC., A TENNESSEE CORPORATION,**<br><br>        Defendant. | CASE NO. 1:19-cv-1170-STA |

CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing pleading has been served via the Court's Electronic Case Filing to the following:

        **Charles Ryan Morgan**
        MORGAN & MORGAN - Orlando
        20 N. Orange Avenue
        Suite 1600
        Orlando, FL 32802
        407-418-2069
        rmorgan@forthepeople.com

        **FISHER PHILLIPS LLP**

        */s/ Courtney L. Leyes*
        **Courtney L. Leyes, Esq.**
        TBN 34012
        Fisher & Phillips, LLP
        1715 Aaron Brenner Drive, Suite 312
        Memphis, TN 38120
        Telephone: (901) 526-0431
        Fascimile: (901) 526-8183
        Email: cleyes@fisherphillips.com

Respectfully submitted September 10, 2019.        **ATTORNEY FOR DEFENDANT**